IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MARCO ANTONIO RIOS-LOPEZ, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-06-514-S-BLW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| LAWRENCE WASDEN, Idaho | ) | |
| Attorney General, and VAUGHN | ) | |
| KILLEEN, Director of Idaho | ) | |
| Department of Correction, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus action are Respondents' motion for summary judgment (Docket No. 21), Petitioner's motion for leave to conduct discovery (Docket No. 29), and Petitioner's motion for an evidentiary hearing and expansion of the record (Docket No. 30). Having reviewed the record, the Court finds that oral argument is unnecessary. Accordingly, having considered the arguments of the parties, the Court enters the following Order granting Respondents' motion for summary judgment and denying Petitioner's motions for discovery, an evidentiary hearing, and expansion of the record.

MEMORANDUM DECISION AND ORDER 1

**BACKGROUND**

Petitioner was convicted of three counts of trafficking drugs and three counts of failure to affix illegal drug stamps after a jury trial in the Fifth Judicial District Court in Blaine County, Idaho.  Judgment of conviction was entered on October 17, 2001.  He was sentenced to an aggregate term of 48 years, with 24 years fixed.

Petitioner filed a direct appeal and  a petition for post-conviction relief in the state district court.  Neither was successful.  Petitioner filed this federal habeas corpus action on December 22, 2006.  Previously in this case, the Court determined that Claims Five through Nine and Eleven through Fifteen were procedurally defaulted. (Docket No. 19.) Petitioner was presented with an opportunity to file a brief to show cause and prejudice or actual innocence if he wished to try to excuse the default of these claims.  Petitioner has not filed a brief; therefore, these claims shall be dismissed with prejudice.

The Court permitted Petitioner to proceed to the merits of Claims Ten and Sixteen. Petitioner was also presented with the opportunity to request an evidentiary hearing and show that he meets the standard for the granting of an evidentiary hearing.

**PETITIONER'S MOTION TO CONDUCT DISCOVERY,
MOTION FOR AN EVIDENTIARY HEARING. AND MOTION TO EXPAND
THE RECORD WITH ITEMS RECEIVED THROUGH DISCOVERY**

Petitioner has moved the Court to permit him to conduct limited discovery on his claim that his trial counsel, Brian Elkins, was ineffective for failing to investigate and present evidence of Petitioner's alibi defense.  Petitioner also requests an evidentiary hearing.  Respondents oppose these motions, arguing that Petitioner is not entitled to

MEMORANDUM DECISION AND ORDER 2

discovery or an evidentiary hearing because he did not show diligence in trying to develop these facts in the state court proceeding.

If a petitioner wishes to bring new evidence on federal habeas review that has not been presented to the state courts, *and* he failed to develop the factual basis of the claims in state court because of "lack of diligence or some greater fault, attributable to" him *or his counsel*, then he must meet the requirements of § 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 432 (2000). If he is not at fault for not presenting the evidence to the state courts, then he can present the evidence on federal habeas corpus review without meeting the requirements of § 2254(e)(2). *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004).

The *Williams v. Taylor* Court explained what it means to fail to develop the facts in state court:

> The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend, as the Commonwealth would have it, upon whether those efforts could have been successful.

529 U.S. at 436. Applying this standard, the Court found that the petitioner and his counsel had not been diligent in developing the factual basis of his *Brady* claim because the petitioner had notice that a psychiatric report of his co-defendant existed, given that it was referenced in the co-defendant's sentencing hearing transcript that Petitioner's state habeas corpus counsel had. The references should have alerted counsel to the existence

MEMORANDUM DECISION AND ORDER 3

and materiality of the record as supporting a *Brady* claim on state habeas review.  *Id*. at 438-39.  However, the petitioner failed to bring the report or claim forward until federal habeas review.  The Court concluded:

> Given knowledge of the report's existence and potential importance, a diligent attorney would have done more. Counsel's failure to investigate these references in anything but a cursory manner triggers the opening clause of § 2254(e)(2).

*Id*. at 439-40.

Here, because not all of the state post-conviction record was presented to the Court, the Court ordered that the record be expanded pursuant to Rule 7 to include additional documents that may have shown any efforts Petitioner made to develop the facts in state court.  Those records have been received.  (Docket No. 36.)

The state court record reflects that Petitioner filed his post-conviction petition and requested a hearing and appointment of an attorney on September 24, 2003.  Attorney Bob Pangburn was appointed to represent Petitioner in his post-conviction case on September 26, 2003.  The State filed an answer on October 29, 2003, and a motion for summary disposition on April 27, 2004. (State's Lodgings C-1, pp. 12-15 & D-1.)  No response was filed on behalf of Petitioner.  As a result, the clerk of court issued a notice of proposed dismissal based on inactivity in the case.  (State's Lodging E-7, Docket No. 36.)  On October 14, 2004, Mr. Pangburn filed an affidavit in support of retention, stating that the case should not be dismissed "on the grounds of inactivity," and that it was "ready to be set for trial on the merits."  (State's Lodging E-4, Docket No. 36.)

MEMORANDUM DECISION AND ORDER 4

The court heard oral argument on the motion for summary disposition on November 8, 2004.  At the hearing, Attorney Anita Moore, from Bob Pangburn's office, represented Petitioner.  She attempted to call Petitioner to testify, but the State objected, because no response or affidavits of Petitioner had been filed in response to the motion to dismiss.  The state court agreed with the State that it was too late to attempt to provide facts for the first time at the hearing on the summary disposition motion and refused to allow Petitioner to testify.  (State's Lodging C-2, pp. 7-12.)  The summary disposition motion was granted and an order dismissing the petition was entered on November 15, 2004.  (State's Lodging C-1, p. 43.)

The Court takes judicial notice of the register of action for the state post-conviction case.  It shows that a "notice of service of discovery documents was filed on May 5, 2004.  Neither an original nor a copy of this document has been found.  (State's Lodging E-6, Docket No. 36.)   Assuming that a notice of service of discovery documents was prepared and served, the Court still cannot conclude on that basis alone that diligence was shown.  There is no indication that discovery was received by Mr. Pangburn, or, if it was not received, that he followed up on the request.  Further, the facts Petitioner wishes to present here and should have obtained there, if they exist as Petitioner alleges, were not within the State's control, but were items that Petitioner's counsel should have obtained on his own–an affidavit from trial counsel, an affidavit from a car salesman, and a weather report.

MEMORANDUM DECISION AND ORDER 5

On the foregoing facts and procedural history, the Court concludes that Petitioner did *not* show diligence in trying to develop the facts in state court.  Petitioner's counsel was placed on notice early in the case not only by the petition itself, but by the State's motion for summary dismissal, that the petition contained "conclusory and unsubstantiated" allegations that "[did] not meet the petitioner's burden of showing prejudice and thus [were] subject to summary disposition."  (State's Exhibit D-1, p. 8). The post-conviction statute requires the petitioner to attach or provide admissible evidence with his petition in order to survive summary dismissal.  *See* Idaho Code § 19-4903.  The statute acknowledges that in some cases that is not possible, but in Petitioner's case, counsel had sufficient time to obtain at least some information and amend the petition to include it.  For example, Mr. Pangburn could have interviewed Petitioner's defense counsel, Brian Elkins, to determine whether he attempted to obtain alibi evidence and prepare an affidavit.  Pangburn could have interviewed the used car salesman at Five Points Auto Sales in Twin Falls, Idaho, and obtained an affidavit from him.  Pangburn could have obtained a copy of the weather report to bolster Petitioner's argument that road conditions made it impossible for him to have traveled from Twin Falls to Ketchum on the day in question.

Unfortunately, Petitioner's case was not the only case neglected by Mr. Pangburn. On January 17, 2008, Bob Pangburn was suspended from the practice of law for failing to consult and communicate the objectives of representation to clients, for failing to keep clients informed, for failing to explain matters so that clients could make informed

MEMORANDUM DECISION AND ORDER 6

decisions, and for misrepresentation.  (*In re Pangburn*, Idaho S. Ct. Dkt. No. 34173, Ref.

No. 7-287 (Order of Jan. 17, 2008).)  However, Mr. Pangburn's lack of diligence is

attributable to Petitioner.  *See Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("a failure to

develop the factual basis of a claim is not established unless there is a lack of due

diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel").

     The Court concludes that the state court's summary dismissal of Petitioner's

speculative petition without further development of the record was well within the

statutory guidelines given that Petitioner and his counsel had notice of the deficiencies

early in the post-conviction case and could have cured them by amendment.  As a result

of Petitioner's lack of effort to present his evidence to the state court at the time of his

post-conviction case, the Court concludes that "[t]he failure to investigate or develop a

claim given knowledge of the information upon which the claim is based, is not the

exercise of diligence."  *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005).

Here, a diligent petitioner would have done more.  "[The] failure to investigate these

[items] in anything but a cursory manner triggers the opening clause of § 2254(e)(2)."

529 U.S. at 439-40.

     As a result of his failure to exercise diligence during the state court proceedings, if

Petitioner wishes to introduce new evidence in this action, he must meet the standard of §

2254(e)(2) and show that his claims are based either on a new retroactive rule of

constitutional law or on a factual predicate that could not have been previously

discovered through the exercise of due diligence, *and* that "the facts underlying the claim

MEMORANDUM DECISION AND ORDER 7

would be sufficient to establish by clear and convincing evidence that but for the

constitutional error, no reasonable factfinder would have found the applicant guilt of the

underlying offense." *See* § 2254(e)(2)(A)&(B).  This Petitioner has not done.

Petitioner also requests an evidentiary hearing.  In *Schriro v. Landrigan*, 550 U.S.

465, 127 S.Ct. 1933 (U.S. 2007), the Court explained the standard governing such a

request:

> In deciding whether to grant an evidentiary hearing, a federal court
> must consider whether such a hearing could enable an applicant to prove the
> petition's factual allegations, which, if true, would entitled the applicant to
> federal habeas relief.  Because the deferential standards prescribed by §
> 2254 control whether to grant habeas relief, a federal court must take into
> account those standards in deciding whether an evidentiary hearing is
> appropriate.

*Id*., 127 S.Ct. at 1940 (internal citations and punctuation omitted).  Therefore, "if the

record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

district court is not required to hold an evidentiary hearing." *Id*.  For example, "an

evidentiary hearing is not required on issues that can be resolved by reference to the state

court record." *Id*.  Here, because Petitioner is not entitled to undertake discovery and

bring forward new evidence, the Court concludes that the issues contained in the petition

and motion for summary judgment can be resolved by referring to the state court record.

As a result, Petitioner's motions for discovery, an evidentiary hearing, and expansion of

the record with items received through discovery (Docket Nos. 29 & 30) shall be denied.

MEMORANDUM DECISION AND ORDER 8

## RESPONDENTS' MOTION FOR SUMMARY JUDGMENT

**Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11, Rules Governing Section 2254 Cases.  Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

Petitioner's case was filed after April 24, 1996, making it subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In order to obtain federal habeas corpus relief from a state court judgment under AEDPA, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

MEMORANDUM DECISION AND ORDER 9

To prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Id.*, 530 U.S. at 166. However, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

MEMORANDUM DECISION AND ORDER 10

**Claim Ten**

Claim Ten is that Petitioner's trial counsel failed to investigate, present, or properly preserve an alibi defense which he alleges would have established that he was factually incapable of making a hand-to-hand drug sale to the paid informant because he was in a different city, Twin Falls, at the time of the drug buy on December 14, 2000.  This defense would have applied to one of the three drug charges.

A criminal defendant has a constitutional right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963).  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation.  To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby.  *Id.* at 684.  Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id.* at 684, 694.  A reasonable probability is one sufficient to undermine confidence in the outcome.  *Id.* at 694.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight.  *Id.* at 689.  The court must indulge in the strong

MEMORANDUM DECISION AND ORDER 11

presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* The pertinent inquiry "is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

The second prong of the *Strickland* test requires that a defendant show that the attorney's deficient performance prejudiced his defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. 466 U.S. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. The *Strickland* Court advised:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the records is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining finds, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

466 U.S. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider

MEMORANDUM DECISION AND ORDER 12

either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

Petitioner raised this claim in his post-conviction petition. His petition was dismissed on the grounds that "[a]ll allegations contained in the petition are unsupported by facts contained in affidavits, records, or other evidence and are bare and conclusory allegations, and thus the Petitioner has failed to tender a factual showing based on evidence admissible at the hearing that would entitle him to relief." (State's Lodging C-1, p. 43.) On appeal of the post-conviction matter, the Idaho Court of Appeals noted that the only factual information Petitioner provided in his state post-conviction petition was that Brian Elkins did not conduct "any kind of independent investigation proving the petitioner was in another city during one of the alleged drug buys." (State's Lodging D-5, p. 1; State's Lodging C-1, p. 6.) The Court of Appeals rejected Petitioner's argument that because the petition was verified, it served as an affidavit and constituted evidence sufficient to survive summary dismissal. Rather, the Court of Appeals concluded that Petitioner failed to "meet his burden to prove either the deficient performance prong or the prejudice prong" of his ineffective assistance claim because it was "nothing more than a vague conclusory allegation containing no admissible factual evidence." (State's Lodging D-5, p. 2.) The Court of Appeals gave several examples of the types of evidence Petitioner could have provided, including a showing that "Rios-Lopez informed his counsel that he was in another city during one of the drug buys" or evidence of the

MEMORANDUM DECISION AND ORDER 13

"identity of witnesses who could have testified to the alibi or any other confirmatory evidence that Lopez was in that city."  (*Id.*)

The Court agrees with Respondents' argument that Petitioner has failed to show that the Idaho Court of Appeals's decision is contrary to or an unreasonable application of *Strickland* under § 2254(d)(2).  Petitioner has not pointed to anything in the record showing that his counsel's performance fell below an objective standard of reasonableness or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.  As a result, Petitioner is not entitled to relief under § 2254(d)(1).  Similarly, Petitioner has not shown that the state court opinion is based on an unreasonable determination of the facts in light of the record, given that the record is devoid of facts upon which the Court of Appeals could have determined that Petitioner's counsel performed ineffectively or that his case was prejudiced.  As a result, relief under § 2254(d)(2) is not warranted.

## Claim Sixteen, Part One: Prosecutor's Comments on Nationality

Claim Sixteen is that prosecutorial misconduct occurred, violating Petitioner's Fourteenth Amendment rights, when the prosecutor made statements that evoked racisim and prejudice against foreigners in his closing argument.  In cases where prosecutorial misconduct is alleged to have violated the defendant's right to due process, the relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  Moreover, the appropriate standard of review for such a claim on writ of

MEMORANDUM DECISION AND ORDER 14

habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power that [a judge] would possess in regard to its own trial court." *Id*. at 642.

Applying the standard for jury instructions to comments made by prosecutors, the *DeChristoforo* Court noted that it is not enough for a comment to be "undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id*. at 643.  In *DeChristoforo*, the prosecutor remarked in closing argument: "They (the respondent and his counsel) said they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder." *Id*. at 640.  The trial court gave the jury an instruction that the remark was improper and should be disregarded, as well as an instruction stating that argument was not evidence.  *Id*. at 641.  In rejecting the defendant's claim that the remark of the prosecutor constituted a due process violation requiring a new trial, the *DeChristoforo* Court particularly noted that the prosecutor's remark was "but one moment in an extended trial and was followed by specific disapproving instructions," and the Court concluded that "[a]lthough the process of constitutional line drawing in this regard is necessarily imprecise, we simply do not believe that th[e] incident made respondent's trial so fundamentally unfair as to deny him due process." *Id*. at 645.

While United States Supreme Court cases govern this Court's § 2254 analysis, cases from the lower federal courts are instructive in determining whether the Idaho appellate court reasonably applied *DeChristoforo*.  *See Duhaime v. Ducharme,* 200 F.3d at

600.  One such similar case is *Smith v. Farley*, where the district court summarized

existing law on this issue:

> "The Constitution prohibits a prosecutor from making race-conscious
> arguments since it draws the jury's attention to characteristics that the
> Constitution generally demands that the jury ignore." *United States v.
> Hernandez*, 865 F.2d 925, 928 (7th Cir. 1989) (citations omitted). "Federal
> courts have long condemned racially inflammatory remarks during
> governmental summation." *United States v. Doe*, 903 F.2d 16, 24 (D.C.Cir.
> 1990). "Racial fairness of the trial is an indispensable ingredient of due
> process and racial equality a hallmark of justice." *Id.* at 25. "Appeals to
> racial passion can distort the search for truth and drastically affect a juror's
> impartiality." *Id.* "The impropriety of pleas capable of arousing racial biases
> is consistently recognized even when they fall short of the danger zone, or
> are justified by the circumstance." *Id.* at n. 63. The issue here is whether the
> references distorted the search for truth and drastically affected the
> impartiality of the jury. The remarks must be considered within the context
> of the entire trial, and the remarks must be found to have been inflammatory
> and prejudicial to the petitioner. *U.S. v. Hasting*, 461 U.S. 499, 103 S.Ct.
> 1974, 76 L.Ed.2d 96 (1983). In *United States v. Hernandez*, *supra*, the
> prosecutor in his closing argument referred to the defendants as "Cuban drug
> dealers." *Id.* On the issue of prosecutorial misconduct, the Seventh Circuit
> explained that "[t]he prosecutor's remark was not intentionally injected into
> volatile proceedings where the prosecutor had targeted the defendant's ethnic
> origin for emphasis in an attempt to appeal to the jury's prejudices."
> Hernandez, 865 F.2d at 928. The *Hernandez* court emphasized that while the
> "prosecutor's reference may have been inappropriate ... there is no evidence
> that this singular comment was a deliberate attempt to play upon the
> prejudices of the jury." *Id.*

873 F.Supp. 1199, 1213 (D. Ind. 1994), *aff'd by* 59 F.3d 659 (9th Cir. 1995).

In *Smith v. Farley*, during closing argument the prosecutor described the testimony

of an African-American witness as "shucking and jiving on the stand," meaning that the

witness was speaking in a misleading or evasive manner.  873 F.Supp. at 1214.  The

MEMORANDUM DECISION AND ORDER 16

prosecutor also said the defendant "had to play Superfly[1] and shoot the victim where he lay."  *Id.*  The court rejected Smith's claim that the racial remarks resulted in an unfair trial:

> The prosecution's above mentioned references are opaque and limited in scope. The prosecutor should however have refrained from such statements. *See, U.S. v. Dominguez*, 835 F.2d 694, 700 (7th Cir.1987). That is clear. The issue here is whether the prosecutor's discourse was prejudicial to the verdict in this case. The evidence of guilt in this case is overwhelming. The prosecutor's remarks did not interfere with the impartiality of the jurors. A reference of this nature in the scope of the entire trial does not make the verdict suspect.

*Id.*

On the other hand, an egregious example of the use of race during a trial is found in *United States v. Newsome*, 903 F.2d 16 (D.C. Cir. 1990).  There, the defendants, including two of Jamaican nationality, stood trial for drug and firearm offenses.  The prosecution called an expert witness who testified that Jamaican drug dealers had taken over the illegal drug market in the locale.  The questioning focused on how in particular "the Jamaicans" operated their drug sales organizations.  *Id.* at 19.  In closing argument, the prosecutor referenced the expert and then compared his testimony to the defendants, stating,

> And what is happening in Washington, D.C. is that Jamaicans are coming in, they're taking over the retail sale of crack in Washington, D.C. It's a lucrative trade.  The money, the crack, the cocaine that's coming into the city is being take over by people just like this–just like this.

---

[1] *Superfly* is a 1972 movie in which drug dealers are "glorified as a means of subtly critiqu[ing] the civil rights movement's failure to provide better economic opportunities for black America. The portrayal of a black community controlled by drug dealers serves to highlight that the initiatives of the civil rights movement were far from fully accomplished." http://en.wikipedia.org/wiki/Super_Fly_(film).

MEMORANDUM DECISION AND ORDER 17

*Id*. at 24.  The prosecutor went to argue how the evidence fit the expert's discussion of how the Jamaican drug dealers operated:

> And sure enough, Herman Robinson told you. He said the drugs and the guns were the Jamaicans. "They came into my apartment and I was afraid of them." And didn't Dwight Rawls testify that that is what's happening in Washington, D.C. these days? They're coming into the apartments, they're taking them over, they're using them for drugs, they're using them to package the drugs, to cook them, to sell them on the street. And how do they do it? They do it through fear and intimidation, through guns, swaggering around the house with the guns, the threats, the violence that's just under the surface there with these two gentlemen. That's how they do it. And that's the framework for you to consider this case in. That's the way the case came out.
>
> * * * *
>
> That's the phenomenon, that's what you had at 1711 Lincoln Road.

*Id*.

In analyzing the foregoing closing argument, the *Newsome* court noted that "[t]he line of demarcation is crossed . . . when the argument shifts its emphasis from evidence to emotion."  *Id*. at 25.  Defendants did not object to the comments at trial, and thus the court used the plain error doctrine to conclude that the "prosecutor's discourse on the activities of Jamaican drug dealers and the accompanying tie-in with appellants [was] . . . legally improper."   *Id*. The court went on to conclude that the error was not harmless given that the evidence against the defendants "was hardly overwhelming," that a first trial had ended with the jury being "unable to agree that any appellant was guilty of any of the offenses charged," and that "prosecutorial remarks kindling racial or ethnic predilections 'can violently affect a juror's impartiality.'" *Id*. at 28.

MEMORANDUM DECISION AND ORDER 18

This Court now turns to an examination of the prosecutor's closing argument in this case:

> You know, these defendants have enjoyed every single constitutional right that America affords. They have been given a trial by their peers; they've had the right to be represented by counsel, very able counsel; they've had their right as it should be to not put on any evidence whatsoever. That's our system of justice.
>
> &ast; &ast; &ast; &ast;
>
> These men put the state to the task of proving every single element. You were probably bored to tears yesterday and this morning with me going through every bit of this evidence and wondering why is he putting this guy on to say yes, that's my signature. But, see, that's another one of these rights that's afforded a defendant, that I have to prove everything in terms of how that evidence go in and is it credible. That's my job. But, you know, with these freedoms and with these rights there comes a price, and that's really what we're here for and that's what this is about and that's what you have to decide. We have to take responsibility, no matter who that is, because here in America, irrespective of nationality, you get a right to use every one of these constitutional guarantees. The price of that freedom is high. And I'm here, as the state, to help collect, but it's up to you to decide what happens. You have to decide have I done my job, have these men been given a fair trial and have I proved my case to you beyond a reasonable doubt.
>
> Ladies and gentlemen, you can enforce these laws by verdicts of guilty. That's the price that Marco Rios-Lopez should have to pay and that's the price that Mario Garcia should have to pay because they, they've exercised every freedom that we have.

(State's Lodging A-5, p. 708-710)

The Idaho Court of Appeals did not reach the issue of whether the foregoing comments constituted prosecutorial misconduct. Rather, it determined that "[e]ven if the prosecutor overstepped the bounds of proper argument," the error was harmless. (State's

MEMORANDUM DECISION AND ORDER 19

Lodging B-6, p. 4.)   Issues not addressed by the state court are to be reviewed in a de novo fashion.  *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003), such as the prosecutorial misconduct issue here.   Where the state court has performed a harmless error analysis and has determined that a constitutional violation was harmless, a federal court cannot grant habeas corpus relief unless the state court's harmlessness determination was unreasonable.  *See Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curium).

A federal court reviewing a state court's harmless error analysis is required to use the harmless error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state court used the standard set forth in *Chapman v. California*, 386 U.S. 18, 22-24 (1967).  *Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 2328 (2007).  The "substantial and injurious effect" standard set forth in *Brecht* is more forgiving than the *Chapman* standard of whether the error was harmless beyond a reasonable doubt, and hence more appropriate for use on collateral review.  *Id*. at 2325.

This Court first focuses on the prosecutorial misconduct prong of Claim Sixteen.  In *United States v. Hernandez,* cited above in *Smith v. Farley*, the Seventh Circuit Court of Appeals identified several factors to consider in an analysis of whether a prosecutor's improper comments infected the trial with unfairness to amount to a constitutional error: (1) "the nature and seriousness of the prosecutorial misconduct," (2) "whether the comments are invited by impermissible conduct of the defendant's counsel," (3) whether the court issued curative instructions," and (4) "the weight of evidence against the defendant."  865 F.2d at 927.

Here, the prosecutor's remarks were obviously improper, but they were not tied to
the evidence in an effort to show that foreign nationals were more likely to commit the
type of crime charged, as in the references to "the Jamaicans" in *Newsome*.  The comments
were like those in *Hernandez*, where the prosecutor said to the jurors:  "Each of you by the
verdict that is represented by the evidence will send a clear message to Cuban drug dealers
and drug dealers in these United States."  865 F.2d at 927.   The statements here and in
*Hernandez* reflect the same type of prosecutorial theme--that jurors should punish and
send a message to foreign nationals who commit crimes in the United States.  The Court
finds these remarks moderately serious, but less so than in *Newsome*, because they were
not tied to the evidence for the purpose of showing that defendants were guilty.

Here, there is no evidence in the record that the defense attorney invited the
comments by using impermissible comments himself.  In his closing argument, counsel for
Petitioner stated:

> You and only you get to decide the facts of ths case and it really can't
> be disturbed. So you are actively participating in our system, in our
> government, making this whole process work because without you it doesn't
> work.  We talked about that a lot in voir dire.
> And part of that are these fundamental notions that we talked about as
> well: Right to a jury trial, presumption of innocence, the state's burden of
> proof, beyond a reasonable doubt and, contrary to what Mr. Thomas told you
> in his opening statement about what I said in my opening statement, I said
> what this case will come down to is whether or not the state can prove its
> case beyond a reasonable doubt whether or not it has carried that burden.

(State's Exhibit A-5, p. 692.)  While defense counsel did not make impermissible
comments, he invited the prosecutor's rebuttal discussion about a defendant's rights in a

MEMORANDUM DECISION AND ORDER 21

criminal trial.  Obviously, however, the prosecutor could have addressed these comments about the constitutional rights of criminal defendants without referring to Petitioner's nationality.

Petitioner's trial counsel made no objection to the comments about nationality, and thus the court did not give a curative instruction.  Throughout the trial, prosecutors did not highlight Defendants' nationality in any way in questioning witnesses or presenting evidence.  (State's Lodgings A-2 to A-5.)  The jury was otherwise aware that the defendants were not English speakers, as the defendants used interpreters during the trial to understand the proceedings, and prosecutors used an interpreter to interpret transcripts of recordings of drug transactions from Spanish to English.

Finally, the weight of the evidence presented at trial was overwhelming.  The Idaho Court of Appeals described it as follows:

> Rios-Lopez' indictment resulted from controlled buys of illegal drugs made by a confidential informant named Jesus Vega under the supervision of Blaine County law enforcement officers.
> * * * *
> The charges against Rios-Lopez were based on two transactions in which, according to Vega's testimony, he purchased cocaine from an individual known as "Fidel."  At trial, Vega identified Rios-Lopez as the man known as Fidel from whom he made the purchases.  An officer who conducted surveillance on one of the transactions also identified Rios-Lopez as the individual he had seen delivering the cocaine to Vega.  An officer also testified that after Rios-Lopez's arrest, during a police interview, he acknowledged that he went by the name "Fidel."  When the police executed a search warrant for Rios-Lopez's apartment, they found him asleep in a bedroom where, according to Vega's testimony, Rios-Lopez had gone to obtain the drugs for Vega.  In the same bedroom, police found baggies of cocaine, thousands of dollars of cash which included bills with serial

MEMORANDUM DECISION AND ORDER 22

numbers matching the "buy money" given to Vega by police, and other evidence of drug dealing.

(State's Lodging B-6, p. 4.)

Considering the entire record, the Court concludes that the remarks of the prosecutor were improper, but did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Therefore, the Court concludes that the prosecutorial misconduct falls short of constitutional error.

Next, the Court turns to the state court's harmless error decision, Also based upon its review of the entire record, the Court concludes that the decision was not contrary to or an unreasonable application of clearly-established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence in the record. Based upon all of the foregoing, the Court concludes that the improper comments of the prosecutor in his rebuttal argument did not have a substantial and injurious effect or influence in determining the jury's verdict under the *Brecht* standard. This Court detects no "actual prejudice" resulting from the improper comments, given the brief, general nature of the comments and the overwhelming evidence of guilt. *See Brecht*, 507 U.S. at 637. As in *Hernandez*, the Court here concludes that "[i]n view of the evidence presented, it is inconceivable that if the prosecutor had refrained from making the remarks he did, [the petitioner] would have been acquitted." 865 F.2d at 928. As such, habeas corpus relief on this claim is not warranted under § 2254(d).

**Claim Sixteen, Part Two: Prosecutor's Remark about Defendants Presenting No Evidence**

MEMORANDUM DECISION AND ORDER 23

Finally, the Court notes that Petitioner has also alleged that the prosecutor's rebuttal argument, set forth above, improperly referenced Petitioner's right to remain silent pursuant to the Fifth Amendment.  Particularly, the prosecutor stated, "they've had their right as it should be to not put on any evidence whatsoever."  (States's Lodging A-5, p. 708.)   At trial, Petitioner's counsel objected, and the objection was overruled.  (*Id.*, pp. 708-09.)

The Idaho Court of Appeals rejected Petitioner's Fifth Amendment claim by quoting from its opinion in the companion case of Petitioner's co-defendant, Mario Romero-Garcia:

> With respect to Romero-Garcia's claim that the prosecutor improperly commented upon his exercise of the right not to present evidence, Romero-Garcia has failed to persuade this Court that any misconduct occurred.  The prosecutor reiterated what the district court had already instructed–that the state bears the burden of proving every element beyond a reasonable doubt and that the defendant has no obligation to present evidence.  The prosecutor stated that criminal defendants have these and a number of other rights.

(State's Lodging B-6, p. 3.)[2]  The Court of Appeals also concluded that if error occurred from the remark, it was  harmless. (*Id.*, p. 4.)

The Fifth Amendment prohibits a prosecutor from making comments on the defendant's failure to testify in his own behalf. *Griffin v. California*, 380 U.S. 609, 615

---

[2]  In its opinion, the Idaho Court of Appeals incorrectly stated that defense did not object to this statement, because an objection was made and overruled by the trial court.  (State's Lodging, B-6, p. 3.)  However, this error does not affect that or this Court's analysis of the Fifth Amendment issue.

MEMORANDUM DECISION AND ORDER 24

(1965).[3]  In another case, the Supreme Court explained that *Griffin* prohibits the

prosecution from "urging the jury to do . . . something the jury is not permitted to do."

*Portuondo v. Agard*, 529 U.S. 61, 67 (2000).  The test used in the Ninth Circuit to

determine whether there was a *Griffin* violation is "whether the language used was of such

a character that the jury was naturally and necessarily take it to be a comment on the

failure to testify."  *United States v. Mende*, 43 F.3d 1298, 1301 (9th Cir. 1995).  Further,

the Ninth Circuit has interpreted *Griffin* to allow a prosecutor to "properly comment upon

the defendant's failure to present exculpatory evidence, as long as it is not phrased to call

attention to defendant's own failure to testify."  *Id*. at 1301 (internal citations omitted).[4]

---

[3]  In *Griffin*, the Supreme Court found a Fifth Amendment violation where the prosecutor's closing argument went as follows:

> "The defendant certainly knows whether Essie Mae had this beat up appearance at the time he left her apartment and went down the alley with her.
>
> What kind of a man is it that would want to have sex with a woman that beat up as she was beat up at the time she left?
>
> He would know that. He would know how she got down the alley. He would know how the blood got on the bottom of the concrete steps. He would know how long he was with her in that box. He would know how her wig got off. He would know whether he beat her or mistreated her. He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman.
>
> These things he has not seen fit to take the stand and deny or explain.
>
> And in the whole world, if anybody would know, this defendant would know.
>
> Essie Mae is dead, she can't tell you her side of the story. The defendant won't."

380 U.S. 610-11.

[4]  In *Mende*, the prosecutor stated in his rebuttal argument that the defense had failed to present any evidence of prior successful business deals.  43 F.3d at 1300.  In finding no error, the Ninth Circuit Court noted:

MEMORANDUM DECISION AND ORDER 25

The comment at issue here did not directly refer to Petitioner's silence.  Rather, it was a reference to the overall criminal justice system provided by the Constitution–that the State bears the burden of proof, and that a defendant is not required to put on evidence to prove that he is innocent.  On this point, the State persuasively argued on direct appeal:

> It is common for a court to inform a jury that a defendant has no obligation to present evidence.  See, e.g., ICJI 101 (defendant "not required" to present evidence; 103A (defendant has no duty to present evidence); 301 (no inference from defendant's choice to not testify).  The court in this case specifically instructed the jury to draw no inferences from the defendants' failure to testify.  (Tr. Vol III, p. 660.)  The prosecutor merely did what courts and defense counsel often do; he stated the rights of the defendant.  What he did not do was implicitly invite the jury to make inferences of guilt upon matters not shown by the evidence.

(State's Exhibit B-5, p. 7.)  This Court finds it particularly relevant that the prosecutor was not referring to the specific evidence itself when he made this comment, but was discussing a defendant's constitutional rights generally and rebutting defense counsel's general remarks about criminal defendants' rights.  In this context, the comment was not one that the jury would naturally and necessarily take as a reference to Petitioner's silence.  Neither did the comment "urge" the jury to decide the case based on Petitioner's silence.

---

> Viewed in its proper context, the prosecutor's comment in this case did not call attention to Mende's failure to testify. The comment instead addressed the defense's failure to produce any evidence of paid guaranties or any other prior successful business transactions in support of Mende's claim that the government had deliberately withheld evidence of his legitimate business activities in order to create the illusion of wrongdoing. This conclusion is supported by the language of the prosecutor's comment itself, which specifically mentioned the availability of subpoena power to call additional witnesses and *reminded the jury that the defendant was in fact under no obligation to take the stand and testify*.
>
> 43 F.3d at 1301 (emphasis added).

MEMORANDUM DECISION AND ORDER 26

The comment was also far from the comments made in *Griffin*.  Finally, the prosecutorial comment in this case is closer to the comment in *Mende* that was deemed appropriate.  *See* Footnote 4, *supra*.

As a result of all of the above, the Court concludes that the state court's decision that no prosecutorial misconduct occurred on the Fifth Amendment issue was not contrary to, or an unreasonable application, of *Griffin*.   Neither was the state court unreasonable in deciding that there was no harmless error in this comment or the nationality comment, or both combined.  The overwhelming nature of the evidence showing that Petitioner was guilty, and the general nature of the comments in question did not have a substantial and injurious effect or influence in determining the jury's verdict.  The Court also concludes that there was no unreasonable determination of the facts in light of the record.  Because the Idaho Court of Appeals' opinion on this issue is not unreasonable in fact or law, habeas corpus relief under § 2254 is not warranted.

**Conclusion**

Petitioner has not shown cause or prejudice or a miscarriage of justice to excuse the default of his Claims One through Nine and Eleven through Fifteen.  Neither has he shown that he is entitled to bring forward new evidence in this habeas corpus proceeding for failure to show diligence in the state court proceedings.  Petitioner's remaining claims, Ten and Sixteen, do not warrant habeas corpus relief under either § 2254(d)(1) or (2).  As a result, the Petition shall be dismissed with prejudice.

**INSTRUCTIONS FOR APPEAL**

MEMORANDUM DECISION AND ORDER 27

Before a petitioner may appeal from the dismissal of a 28 U.S.C. § 2254 petition, he must first obtain a certificate of appealability by filing a request for a certificate of appealability with the federal district court.  28 U.S.C. § 2253(c).  Until a certificate of appealability has been issued, an appellate court lacks jurisdiction to rule on the merits of an appeal.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   A federal district court will not issue a certificate of appealability absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard by demonstrating that reasonable jurists would find debatable both the merits of the constitutional claims and any dispositive procedural rulings by the district court.  *Miller-El v. Cockrell*, 537 at 336 (2003).  Petitioner has thirty (30) days after entry of the Order and Judgment dismissing his case to file a request for a certificate of appealability if he wishes to file an appeal.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.     Respondents' Motion for Summary Judgment (Docket No. 21) is GRANTED.

B.     Petitioner's Motion for Leave to Conduct Discovery (Docket No. 29) is DENIED.

C.     Petitioner's Motion for an Evidentiary Hearing and Expansion of the Record (Docket No. 30) is DENIED.



DATED:  **March 30, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge